# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-1916

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CRISS E. DUNCAN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 03 CR 57—**Allen Sharp**, *Judge.*

_____

ARGUED FEBRUARY 25, 2005—DECIDED JULY 1, 2005

_____

Before BAUER, POSNER and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* After a jury trial, Criss Duncan was
convicted of the following offenses: armed bank robbery, in
violation of 18 U.S.C. § 2113(a) and (d); use of a firearm
during and in relation to that bank robbery, in violation of
18 U.S.C. § 924(c); aiding and abetting the malicious damage
by fire to a vehicle, in violation of 18 U.S.C. §§ 844(i) and 2;
and possessing a firearm despite being a felon, in violation
of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Mr. Duncan appeals
his sentence. For the reasons set forth in the following

opinion, while retaining jurisdiction, we order a limited remand of this case to the district court as required by *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

# I
# BACKGROUND

## A. Facts

We shall set forth only those facts germane to Mr. Duncan's present challenge to his sentence. On May 27, 2003, he and his co-defendant Ralph Berkey, each armed with an assault-type rifle, robbed the National City Bank located in Leesburg, Indiana. At Mr. Duncan's trial, Berkey testified that the firearms that they had used during the robbery had been modified to be fully automatic. R.126 at 25, 41-42. In addition, Larry Joe Ellis testified that, prior to the robbery, he had worked for Berkey to make several firearms fully automatic. *Id.* at 22-24. According to Ellis, after the robbery, Mr. Duncan and Berkey left Mr. Duncan's Mazda truck on Ellis' property, and Berkey told him to "[w]ipe the fingerprints off the guns. Take care of them for me." *Id.* at 22. Ellis found two fully automatic firearms in the truck, and he converted them back to semi-automatic.

The presentence report prepared in Mr. Duncan's case recommended, with respect to the charge of using a firearm during and in relation to the bank robbery, that the firearms used by Mr. Duncan and Berkey be categorized as machine guns.[1] This classification had important conse-

---

[1] "Machine gun" is defined under 18 U.S.C. § 921(23), by reference to 26 U.S.C. § 5845(b), as "any weapon that shoots, is
(continued...)

quences for Mr. Duncan: For violations of 18 U.S.C. § 924(c)(1)(A), the statutory minimum sentence for a semi-automatic firearm is ten years, *id.* § 924(c)(1)(B)(i); the minimum for a machine gun is thirty years, *id.* § 924(c)(1)(B)(ii).[2] Moreover, this minimum prison term is "in addition to the

---

[1] (...continued)

designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

[2] Title 18 section 924(c)(1) provides in part:

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possess a firearm, shall, in addition to the punishment provided for such crime of violence . . . —

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(B) If the firearm possessed by a person convicted of a violation of this subsection—

(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

(ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

18 U.S.C. § 924(c)(1)(A)-(B).

punishment provided for" the underlying crime of violence, here the armed bank robbery. *Id.* § 924(c)(1)(A). Mr. Duncan maintained that no actual proof was established at trial that the firearms were in fact fully automatic.

## B. District Court Proceedings

Over Mr. Duncan's objection, the district court found that the testimony of Berkey and Ellis established, by a preponderance of the evidence, that the firearms used in the National City Bank robbery qualified as machine guns. Under the law prevailing at the time of sentencing, this finding required the district court to sentence Mr. Duncan to at least thirty years in prison on the firearms count. *See id.* § 924(c)(1)(B)(ii); *see also* U.S.S.G. § 2K2.4 (the federal guidelines sentence for violations of § 924(c)(1) is the statutory minimum).

The guidelines sentencing range for Mr. Duncan's remaining convictions was 97 to 121 months. The final guidelines range was 457 to 481 months. The district court imposed a sentence of 457 months' imprisonment, stating:

> In my thirty plus years as a federal judge, because of the mandatory thirty years for using a machinegun, this is without a doubt the longest sentence this Court has given for a bank robbery. A sentence at the low end of the range still places him in federal custody for almost forty years, and seems more than adequate.

R.133 at 14.

## II

## DISCUSSION

### A. Standard of Review

Mr. Duncan contends that his sentence violates his Sixth Amendment rights as interpreted by the Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005), and in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). Specifically, he claims that he is entitled to resentencing because his sentence relies in part upon the district court's finding as to what type of firearm he used during the robbery of National City Bank, a fact that was not proven to a jury beyond a reasonable doubt nor admitted by him. Because Mr. Duncan did not challenge the constitutionality of his sentence before the district court, our review is for plain error. *Paladino*, 401 F.3d at 481.

The plain error standard allows an appellate court to "correct an error that the defendant failed to raise below only when there was (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Henningsen*, 402 F.3d 748, 751 (7th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)); *see also* Fed. R. Crim. P. 52(b). "If these conditions are met, an appellate court may exercise its discretion to notice a forfeited error if (4) the error seriously affects the fairness, integrity, or public reputation of the proceedings." *Id.* (citing *Olano*, 507 U.S. at 732).

### B. Sentence

#### 1.

With respect to Mr. Duncan's contention that *Booker* and *Blakely* require the vacation of his sentence because it is based on a mandatory minimum sentence, the Supreme

Court's decision in *Harris v. United States*, 536 U.S. 545 (2002), controls. In *Harris*, the Court stated that *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), in which it upheld a state statute that mandated minimum sentences based upon judicial fact-finding, could co-exist with the logical implications of the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that " '[o]ther than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . must be submitted to a jury, and proved beyond a reasonable doubt.' " *Harris*, 536 U.S. at 550, 566-67 (quoting *Apprendi*, 530 U.S. at 490).

Contrary to Mr. Duncan's submission, nothing in *Booker* or *Blakely* suggests that the Court reconsidered, much less overruled, its holding in *Harris. See United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005) (noting that *Booker* does not give sentencing courts any discretion to disregard a statutory mandatory minimum).[3] Put simply, *Booker* and *Blakely* do not affect the imposition of statutory minimum sentences.

---

[3] The other courts of appeals to have addressed this issue have concluded that *Booker* does not apply to statutory mandatory minimum sentences. *See*, *e.g.*, *United States v. Bermudez*, 407 F.3d 536, 545 (1st Cir. 2005); *United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005); *United States v. Childs*, 403 F.3d 970, 972 (8th Cir. 2005); *United States v. Moore*, 401 F.3d 1220, 1222 n.1 (10th Cir. 2005); *United States v. Rojas-Coria*, 401 F.3d 871, 874 n.4 (8th Cir. 2005); *United States v. Groce*, 398 F.3d 679, 682 n.2 (4th Cir. 2005); *United States v. Shelton*, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005); *United States v. Sanchez*, No. 03-4760, 2005 WL 419464, at *2 n.2 (3d Cir. Feb. 23, 2005) (unpublished); *United States v. Sharpley*, 399 F.3d 123, 127 (2d Cir. 2005); *United States v. Joiner*, No. 03-5397, 2005 WL 351152, at *1 (6th Cir. Feb. 14, 2005) (unpublished).

Moreover, even if the logic and spirit of those decisions could be interpreted to have eroded the Court's previous rationale for permitting mandatory minimum sentences based on judicial fact-finding, it certainly is not our role as an intermediate appellate court to overrule a decision of the Supreme Court or even to anticipate such an overruling by the Court. *See Roper v. Simmons*, 125 S. Ct. 1183, 1209 (2005) ("[I]t remains *this* Court's prerogative *alone* to overrule one of its precedents . . . . That is so even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for our earlier holding." (emphasis in original, internal quotation marks and citations omitted)); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("The Court of Appeals was correct in applying that principle despite disagreement with *Albrecht* [*v. Herald Co.*, 390 U.S. 145 (1968)], for it is this Court's prerogative alone to overrule one of its precedents." (citing *Khan v. State Oil Co.*, 93 F.3d 1358 (7th Cir. 1996))); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

## 2.

Mr. Duncan's sentence nevertheless requires our intervention. The district court imposed his sentence prior to *Booker* and, understandably, believed itself bound by the federal sentencing guidelines. Our cases hold that, in light of *Booker*, such a misapprehension can amount to plain error. *See, e.g.*, *United States v. Castillo*, 406 F.3d 806, 823 (7th Cir. 2005) (concluding that mandatory application of the guidelines

itself, absent any Sixth Amendment violation, constitutes error (citing *United States v. White*, 406 F.3d 827, 835 (7th Cir. 2005))); *Paladino*, 401 F.3d at 480; *see also Booker*, 125 S. Ct. at 767 (rendering the guidelines effectively advisory, and not mandatory).

If Mr. Duncan were to be resentenced, the district court still would have no discretion to sentence him on the firearm offense to less than the statutory thirty-year minimum. However, this sentence runs consecutively to the sentence imposed because of Mr. Duncan's other offenses. *See* 18 U.S.C. § 924(c)(1)(B). This latter component of his sentence is not tied to a statutory minimum. Thus, *Booker* would afford the district court some additional discretion with respect to Mr. Duncan's total punishment. The district court chose a sentence at the lowest end of the applicable guidelines range and expressed the concern that,

> [i]n my thirty plus years as a federal judge, because of the mandatory thirty years for using a machinegun, this is without a doubt the longest sentence this Court has given for a bank robbery. A sentence at the low end of the range still places him in federal custody for almost forty years, and seems more than adequate.

R.133 at 14. This statement suggests that the district court, even though still bound by the statutory minimum, may well have imposed a lighter total sentence if it had not believed that it was bound by the sentencing guidelines to impose the sentence that it did impose. We cannot know this, however. To enable us to complete our plain error analysis, a limited remand to the district court, in accordance with the procedure outlined in this court's decision in *Paladino*, 401 F.3d at 483-84, is appropriate.

## Conclusion

Accordingly, while retaining jurisdiction, we remand this case to the district court for proceedings consistent with this opinion.

IT IS SO ORDERED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*