UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 28, 2006
Decided October 10, 2006

**Before**

Hon. JOEL M. FLAUM, *Chief Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-4179

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> v. <br><br> GUADALUPE CISNEROS-MORA, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br> No. 03-CR-670 <br><br> Blanche M. Manning, *Judge*. |

**O R D E R**

Guadalupe Cisneros-Mora and others were charged, in a sweeping indictment, with a bevy of offenses: conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846; various substantive offenses involving the possession of cocaine with the intent to deliver, in violation of 21 U.S.C. § 841(a)(1); and with using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b). Pursuant to a written plea agreement, he entered a guilty plea to the conspiracy count and was sentenced to 324 months in prison. His appeal raises a number of issues, all of which depend, to a greater or lesser degree, on whether the district judge was correct to find that he was a manager or supervisor of the conspiracy.

The conspiracy involved the transportation of truckloads of cocaine--often hundreds of kilograms at a time and as much as 6,000 kilograms in total--from Mexico to the Chicago area between June 2002 and July 2003. In the Chicago area, Cisneros-Mora directed the unloading of the cocaine. He participated in transferring it to smaller vehicles and delivering it to various stash houses. To facilitate the unloading, he persuaded codefendant Frank Sroka, a plant

manager for Jarke Corporation in Niles, Illinois, to let him use a company warehouse after business hours. Cisneros-Mora knew Sroka through working with him at Jarke. During the life of the conspiracy, Sroka allowed Cisneros-Mora access to the warehouse between 10 and 15 times to unload cocaine. Cisneros-Mora paid Sroka in cash--between $1,000 and $3,000 for each load.

Cisneros-Mora's plea agreement set out a number of sentencing issues on which he and the government disagreed. The disagreements were thoroughly discussed at the change-of-plea hearing. At sentencing, after the probation officer submitted a report containing guideline calculations, the contested calculations were the subject of a lengthy hearing. Ultimately, Cisneros-Mora lost the battle and received an unarguably hefty sentence.

In this court, the issues raised fit together roughly in the following manner. Cisneros-Mora contends that the district court erred in finding that he was a supervisor or manager. He says he was merely a worker; therefore, he should not have been given an upward adjustment for a more robust role in the enterprise. Related to that issue is his contention that the court erroneously found that because he contested his role in the offense, he was not entitled to an adjustment for acceptance of responsibility. He says he admitted all the facts on which the judge relied to find him a supervisor, so it was error to say that because he contested the adjustment for being a supervisor, he did not accept responsibility and was thus not entitled to an adjustment for acceptance of responsibility. Then he says that his plea was not entered knowingly and voluntarily because, both in his plea agreement and at the change-of-plea hearing, he was led to believe that even if he did not receive the 2-point adjustment for acceptance of responsibility, he would nevertheless receive a 1-point adjustment because he promptly entered a guilty plea. Finally, he says because he was not a manager or supervisor he should have been eligible for a safety valve provision, which would allow him to be sentenced without regard to the statutory minimum sentence for his offense.

We turn to the pivotal questions. Was Cisneros-Mora a supervisor or manager, pursuant to United States Sentencing Guidelines § 3B1.1, and, if so, does the fact that he objected to that characterization of his role in the offense mean he is not entitled to an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a)? The first question is easily answered. Certainly he was. The court's findings are not clearly erroneous, see United States v. McLee, 436 F.3d 751 (7th Cir. 2006), nor would de novo review of the application of the guidelines call her conclusion into doubt, see United States v. Carroll, 346 F.3d 744 (7th Cir. 2003).

Cisneros-Mora recruited Sroka to join the conspiracy by paying him for access to the warehouse. He supervised Sroka and another man in unloading the cocaine. Cisneros-Mora called people to the warehouse when shipments were about to arrive. He directed another person on three cocaine deliveries and one debt collection and instructed that person to rent an apartment to use as a stash house. He was also involved in various financial aspects of the conspiracy, including collecting outstanding debts. These findings meet the § 3B1.1 criteria.

First, it is uncontested that the criminal activity involved five or more participants. Secondly, he managed or supervised one or more other participants, as required. See Commentary to § 3B1.1.

At first glance, the second question--should he nevertheless receive an adjustment for acceptance of responsibility--seems more difficult, but, upon examination, it is not. As much as Cisneros-Mora tries to say he was simply raising a question of law, in fact it is a question of fact whether he supervised one or more participants. Cisneros-Mora persisted in denying the significance of what he did for the conspiracy. Given this record, it was not clearly erroneous for the district judge to find that Cisneros-Mora did not accept responsibility and that he was not entitled to the 2-point adjustment.

Cisneros-Mora also contends that he was eligible for the benefit of a safety valve provision in U.S.S.G. § 5C1.2. That provision allows a court to impose a sentence under the federal guidelines, without regard to a statutory mandatory minimum sentence, if certain criteria are met. As relevant here, one of the criteria is that the defendant must not be a manager or supervisor of the criminal activity. Because Cisneros-Mora was found to be a manager or supervisor, the district court correctly found he was not eligible for § 5C1.2 relief. To argue that § 5C1.2 is applicable in this case is, of course, futile for another reason. A 10-year statutory minimum could have no effect on a sentence which was over two and one-half times that long. The government targets the related issue Cisneros-Mora could reasonably have raised. The provision which could have benefitted Cisneros-Mora, had he not been a manager or supervisor, is U.S.S.G. § 2D1.1(b)(7), which provides for a 2-level decrease in the offense level of a defendant who meets the criteria of § 5C1.2. Although we think that argument would have been a reasonable one to make, he would not prevail on it. He does not qualify for that benefit, again because of his role as a supervisor.

Cisneros-Mora's sentence was imposed within a properly calculated guideline range and is therefore presumed to be reasonable. United States v.Mykytiuk, 415 F.3d 606 (7th Cir. 2005). After the guideline range is calculated, the sentencing court must consider the factors set out in 18 U.S.C. § 3553(a). Cisneros-Mora contends that the district did not properly consider one of those factors--sentencing discrepancies. He compares his sentence with that of one of his codefendants and finds disparity. However, the proper measure of disparity is nationwide, not a comparison in an individual case in which one has gotten a departure for substantial assistance. United States v. Boscarino, 437 F.3d 634 (7th Cir. 2006). We find that the sentence imposed was reasonable.

Finally, Cisneros-Mora contends that he did not knowingly and voluntarily enter into his plea agreement. He did not move to withdraw his plea in the district court, so our review of the issue is for plain error. See Johnson v. United States, 520 U.S. 461 (1997).

Cisneros-Mora says that both the agreement and the change-of-plea hearing led him to believe that even if he did not receive the 2-point acceptance of responsibility adjustment in U.S.S.G. § 3E1.1(a), he would receive the 1-point adjustment in § 3E1.1(b). But these

provisions could not make it clearer that the 1-point adjustment is given only if the 2-point adjustment applies. Section 3E1.1(b) says, "[i]f the defendant qualifies for a decrease under subsection (a)," and other conditions are met, "decrease the offense level by **1** additional level."

Despite that language, Cisneros-Mora points to a discussion at his change-of-plea hearing, which he says misled him. At the plea hearing, it became clear that the offense level could vary from level 33 to level 40--a significant difference, depending on the resolution of the disagreement between the parties as to acceptance of responsibility and his role in the offense. In a very preliminary discussion of what the offense level might be, the following exchange occurred. The government stated that it disputed that a 2-level adjustment for acceptance of responsibility should be given. The court then said,

> Okay. That is what I thought. But you are agreeing that at least the one level would be applicable in terms of the timely notification, is that correct?

The government said it was. We agree that these brief statements might be misleading, or in fact might show a temporary misunderstanding on everyone's part about when the 1-point adjustment can be given. However, the statements must be put into context.

The hypothetical discussion of what the offense level might be--of which these statements were a part--went on for some time. The point of the discussion was to make sure that Cisneros-Mora understood there was a broad range of what his sentence might ultimately be. The judge told him how his sentence would be determined:

> Okay. So we have all kinds of scenarios here. But do you understand that the ultimate determination will be made by this Court after I have had the benefit of a pre-sentence investigation? Do you realize that, sir?

Cisneros-Mora said he did. Further, he was told:

> And do you understand further that this Court is not a party to this plea agreement? . . . Do you understand it will be the Court's ultimate independent determination as to what the sentence will be?

Again he said he did. Finally, the judge informed him:

> And do you understand further that if I don't agree with your attorney and his calculations here, do you understand that will not be a basis for you to withdraw your plea of guilty?

He said he did.

The plea agreement itself stated that errors in calculations or interpretations of the guidelines may be corrected prior to sentencing and that the validity of the agreement will not be affected by the corrections. Further, the defendant would not have a right to withdraw his plea on the basis of such corrections. Specifically as relevant to the 1-level adjustment, the agreement accurately provided:

> Defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline 3E1.1(b). Accordingly, at the time of defendant's sentencing hearing, so long as the Court determines that Section 3E1.1(a) applies, the government will move for an additional 1-level reduction in the offense level . . . . [Emphasis added.]

Given the context surrounding this issue, we cannot find plain error, and Cisneros-Mora's claim that his plea was not knowingly or voluntarily entered must fail.

For these reasons, the judgment of the district court is AFFIRMED.