# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-4678

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CRISS E. DUNCAN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 03 CR 57—**Allen Sharp**, *Judge.*

———————

SUBMITTED APRIL 20, 2006—DECIDED MARCH 22, 2007

———————

Before BAUER, POSNER and RIPPLE, *Circuit Judges.*

PER CURIAM.  In this successive appeal, Criss E. Duncan challenges the reasonableness of his sentence of 457 months' imprisonment on the ground that application of 18 U.S.C. § 924(c)(1)(B)(ii)'s mandatory minimum sentence of 360 months' imprisonment resulted in an unwarranted disparity between his sentence and the sentence received by his codefendant, Ralph Berkey, Jr. For the reasons set forth in this opinion, we conclude that the sentence imposed is reasonable under 18 U.S.C. § 3553(a) and affirm the decision of the district court.

# I

# BACKGROUND

## A.

On May 27, 2003, Duncan and Berkey robbed the National City Bank in Leesburg, Indiana. In the course of the robbery, the two men wore camouflage fatigues, masks and body armor and carried assault-style rifles, which had been modified from semi-automatic to fully automatic by Berkey and another man. They fled the scene in a van with $43,000. Following their escape, Duncan and Berkey, still carrying their weapons, set fire to the van and changed vehicles to a pickup truck. When the two men encountered David Hobbs, the Milford, Indiana Chief of Police, at a roadblock, Berkey opened fire upon Hobbs. Duncan and Berkey then fled to Cassopolis, Michigan, where they hid in a wooded area, planning to resist violently any attempt to apprehend them. The authorities did not arrive. Duncan and Berkey then left the area, but subsequently returned to retrieve the money and weapons they had left in the pickup.

Authorities eventually linked Duncan and Berkey to the robbery and assault upon Chief Hobbs and arrested the two men on May 31, 2003. Both were indicted in the Northern District of Indiana on a two count indictment charging bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). Both men subsequently were charged with the attempted manslaughter of Chief Hobbs in state court.

**B.**

Berkey entered into a plea agreement with federal prosecutors. Under the agreement, he would plead guilty to both counts in his federal indictment, as well as to a separate charge of aiding and abetting in the malicious damage by fire to a vehicle in violation of 18 U.S.C. §§ 2 and 841(i) for burning the getaway van. He also agreed to plead guilty to the state charge of attempted manslaughter. The plea agreement was conditioned on Berkey receiving a sentence of no less than 20 years' imprisonment for his state conviction of attempted manslaughter. In exchange, the Government promised to recommend the minimum sentence under the Sentencing Guidelines, including the maximum credit for acceptance of responsibility in calculating Berkey's total offense level.

Berkey was sentenced to 20 years' imprisonment in Indiana state court for his conviction of attempted manslaughter. At sentencing on the federal charges, after granting a three-level reduction for acceptance of responsibility, the district court calculated Berkey's offense level for the counts of bank robbery and burning the getaway van under the Guidelines to be 20 and his criminal history category of III. The resulting sentencing range was 41-51 months' imprisonment. The district court further found that the use of a firearm in connection with a crime of violence carried a mandatory minimum sentence of 120 months' imprisonment to be served consecutively to Berkey's sentence for bank robbery and burning the getaway van. *See* 18 U.S.C. § 924(c)(1). The district court decided to sentence Berkey to 41 months' imprisonment for the bank robbery and burning the getaway van, resulting in a total sentence of 161 months' imprisonment for his federal offenses. Berkey's federal sentence was to be

served consecutive to his state sentence, resulting in a combined sentence of 401 months' imprisonment.

## C.

Duncan chose to go to trial on both his state and federal charges. The federal prosecutor, in turn, filed a superceding indictment against Duncan, adding four counts. The first two additional counts related to a separate bank robbery. The superceding indictment also charged Duncan with aiding and abetting the malicious damage by fire to a vehicle in violation of 18 U.S.C. §§ 2 and 844(i) for burning the getaway van and for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a) based on seven other weapons found in Duncan's home. Duncan was acquitted of the attempted manslaughter charge in state court. In federal court, the jury was unable to reach a verdict on the two counts related to an earlier bank robbery, but returned a guilty verdict on the remaining counts.

The district court calculated Duncan's sentence under the Guidelines. First, the district court grouped Duncan's convictions of bank robbery and burning the getaway van for purposes of calculating the applicable offense level, just as it had when calculating Berkey's sentence. However, the district court concluded that the applicable offense level for these two offenses in Duncan's case was 26, as opposed to 20. The difference in offense levels resulted from the district court imposing a three-level enhancement to Duncan's base offense level because, based on Berkey's firing upon Chief Hobbs, the offense involved an official victim. The district court had not imposed the enhancement when calculating Berkey's offense

level out of concern that, because Berkey had been sentenced in state court for this conduct in connection with his attempted manslaughter conviction, such an enhancement would violate the Fifth Amendment's Double Jeopardy Clause. Additionally, Berkey had received a three-level reduction in his offense level for acceptance of responsibility and assisting the Government in its prosecution of Duncan. The district court then increased Duncan's offense level by two levels as a result of his separate, non-grouped conviction for felon in possession of a firearm. This resulted in a total offense level of 28, which, with Duncan's criminal history category of III, resulted in a sentencing range of 97-121 months' imprisonment.

As with Berkey, the district court concluded that 18 U.S.C. § 924(c)(1) imposed a mandatory minimum sentence for possession of a firearm in connection with a crime of violence and that such sentence was to run consecutive to Duncan's other sentence. However, because the district court found that the firearm used by Duncan was a machine gun, the mandatory minimum for Duncan's conviction was 360 months' imprisonment. *See* 18 U.S.C. § 924(c)(1)(B)(ii). The district court had made no similar finding with respect to Berkey. The district court then sentenced Duncan to 97 months' imprisonment for his convictions for bank robbery, burning the getaway van and felon in possession of a firearm, the bottom of the Guidelines range, to run consecutive to the statutory mandatory minimum for Duncan's conviction for possession of a firearm in connection with a crime of violence. This calculation brought Duncan's total sentence to 457 months' imprisonment.

**D.**

Duncan appealed his sentence, arguing that he was not subject to the 360 month mandatory minimum sentence because the fact that the firearm used in connection with the bank robbery was a machine gun was neither admitted nor found by a jury beyond a reasonable doubt. We rejected this argument, noting that *United States v. Booker*, 543 U.S. 220 (2005), had no effect on the Supreme Court's decision in *Harris v. United States*, 536 U.S. 545 (2002), which upheld the imposition of a statutory mandatory minimum sentence based on facts found by a judge. *See United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005). However, because the district court had sentenced Duncan prior to *Booker*, we ordered a limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), to determine whether it would have imposed the same sentence under the now-advisory Guidelines. *Duncan*, 413 F.3d at 684.

On remand, the district court re-sentenced Duncan to serve his sentences for bank robbery, burning the get-away van and felon in possession of a firearm concurrently with his sentence for using a firearm during and in relation to a crime of violence. The Government appealed, and we reversed the decision of the district court, holding that the district court did not have jurisdiction to re-sentence under our limited remand. *See United States v. Duncan*, 427 F.3d 464, 465 (7th Cir. 2005). Following this second remand, the district court affirmed its initial sentence of 457 months' imprisonment. The district court noted that it had considered the sentence in light of both the facts of the case and the factors listed in 18 U.S.C. § 3553(a), and found that a sentence of 457 months' imprisonment was appropriate under the circumstances.

The court noted that the 360 month mandatory minimum for use of a fully automatic machine gun in the course of a violent felony reflected the judgment of Congress that use of such weapons in the course of a violent felony was deserving of a minimum sentence of thirty years' imprisonment. The court held that this minimum sentence accounted only for the means by which the defendant committed a violent felony, not the characteristics of the violent felony itself. The court found that a sentence of 457 months' imprisonment reflected the seriousness of the manner in which the felony was perpetrated and better satisfied the § 3553(a) factors.

## II

## DISCUSSION

Duncan does not challenge the accuracy of the guidelines calculation that led to his sentence under the Advisory Guidelines; he challenges only the sentence's reasonableness in light of the factors listed in 18 U.S.C. § 3553(a). Duncan bases this assertion solely on the ground that the difference between the sentence the district court imposed on him compared to the sentence imposed on Berkey amounted to an unwarranted disparity under § 3553(a)(6). Duncan bases this contention on the difference between the district court's sentence of 457 months' imprisonment for his convictions and Berkey's federal sentence of 161 months' imprisonment arising out of the same events.

We first note that the difference between the sentences received by Berkey and Duncan is not as great as Duncan claims. Berkey received a total sentence of 401 months' imprisonment and Duncan received a sentence of 457

months' imprisonment, a difference of 56 months. Although 240 months of Berkey's imprisonment will be served on his state conviction for attempted manslaughter, Berkey's plea agreement in federal court was expressly conditioned on a plea of guilty and sentence of not less than 20 years for his state charge of attempted manslaughter.[1] The Government's decision to accept Berkey's plea under the terms of the plea agreement rather than pursue the higher mandatory minimum under 18 U.S.C. § 924(c)(1)(B)(ii) applicable when the firearm used in connection with a crime of violence is a machine gun that was applied to Duncan is a matter of prosecutorial discretion. Absent a showing of invidious discrimination, we shall not second guess a prosecutor's decision regarding the charges it chooses to bring. *See United States v. Roberson*, 474 F.3d 432, 434 (7th Cir. 2007); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Blake*, 415 F.3d 625, 627 (7th Cir. 2005).

The remaining difference between the two sentences is attributable to the applicable sentencing range for each man under the Advisory Guidelines. Both men had a criminal history category of three. The sole difference in the sentencing ranges was their respective total offense levels. Duncan's total offense level was 28, for which the applica-

---

[1] We recognize that Indiana's rules for awarding good time credit differ considerably from those that apply to federal sentences. The award of good time credit in Indiana is contingent and depends on satisfying the statutory requirements, *see* Ind. Code § 35-50-6-3 & -4 (providing for the calculation of good time credit), and may be revoked under a number of circumstances, *see id*. § 35-50-6-5(a) (listing the conduct for which an inmate may be deprived of good time credit).

ble sentencing range was 97-121 months' imprisonment, and Berkey's total offense level was 20, for which the applicable sentencing range was 41-51 months' imprisonment. Both Duncan and Berkey were sentenced at the bottom of the applicable sentencing range, a difference of exactly 56 months' imprisonment. Duncan does not challenge the correctness of either sentencing range under the Advisory Guidelines.

Sentencing differences attributable to properly calculated sentencing ranges under the Advisory Guidelines cannot be considered unwarranted disparities under 18 U.S.C. § 3553(a)(6). *See United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). 18 U.S.C. § 3553(a)(6) does not instruct district courts to avoid all differences in sentencing, only *unwarranted* disparities "among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see also Boscarino*, 437 F.3d at 638. "[A] sentencing *difference* is not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation," *id.*, or is the result of statutory authorization, *cf. United States v. Miller*, 450 F.3d 270, 276 (7th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 542 (7th Cir. 2006).

Further, the differences between Duncan's and Berkey's respective total offense levels demonstrate that the two men were not similarly situated in terms of sentencing. Part of the difference in the total offense levels flows from Berkey's three-level reduction for acceptance of responsibility and cooperation with the Government in its prosecution of Duncan. Such assistance remains a legally appropriate basis for differences in sentencing. *Boscarino*, 437 F.3d at 638; *see also United States v. Mendoza*, 457 F.3d 726, 730-31 & n.6 (7th Cir. 2006) (noting that a defendant's degree of

cooperation with the Government factors into the circum-
stances surrounding a crime). Closely related was the
district court's decision to decline to apply a three-level
enhancement to Berkey's offense level based on double
jeopardy concerns flowing from Berkey's acceptance of
responsibility and sentencing in state court for the at-
tempted manslaughter of Chief Hobbs, a factor not relevant
to Duncan's sentence. Lastly, Duncan received a two-
level enhancement to his offense level based on his con-
viction for a separate felon in possession charge, a charge
for which Berkey was not convicted.

Even if we were to disregard Berkey's state sentence, the
difference between Duncan's and Berkey's respective
sentences does not amount to an unwarranted disparity. As
noted above, 56 months of the difference was based on
differences in their offense levels under the Advisory
Guidelines. The remaining difference, 240 months' impris-
onment, is attributable to the mandatory minimum sen-
tence under 18 U.S.C. § 924(c)(1) for use of a firearm during
and in relation to a crime of violence that applied to
each man. In the case of Duncan, the district court held
that, because the firearm used by Duncan was a machine
gun, the mandatory minimum sentence was 360 months'
imprisonment. For Berkey, the district court held that the
mandatory minimum was 120 months' imprisonment.
However, as far as the record shows, the district court
had no information relating to the type of weapon used
other than the statement in Berkey's petition to enter a
guilty plea, in which he characterized the weapon as a
semi-automatic. In that respect, Duncan and Berkey were
not found guilty of similar conduct. The Government's
decision to forego the higher mandatory minimum applica-
ble when the firearm in question is a machine gun is a

matter of prosecutorial discretion. We shall not second guess such an exercise of discretion absent a showing of invidious motivation. *See Roberson*, 474 F.3d at 434.

Further, the mandatory minimum to which Duncan was subjected, by itself, would not justify a lower sentence for Duncan's other offenses. Courts may not apply § 3553(a) to reduce a statutory mandatory minimum sentence. *Id.* at 436. That was the rule prior to *Booker* and it remains so. *Id.* When a defendant is subject to a mandatory minimum under 18 U.S.C. § 924(c)(1), the district court must calculate the sentence for the defendant's other offenses without regard to the mandatory minimum sentence. *See id.* at 434. Although the sentence as a whole must be reasonable, the district court may not reduce the sentence for an underlying offense solely because the defendant is subjected to a statutory add-on under 18 U.S.C. § 924(c)(1), as doing so effectively reduces the mandatory minimum sentence. *Id.* at 436.

Lastly, we must determine whether Duncan's sentence was reasonable in light of the factors listed in § 3553(a). Prior to this conviction, Duncan had been convicted of voluntary manslaughter and twice convicted of driving while intoxicated. Duncan was a full participant in the robbery of the National City Bank in Leesburg, Indiana: Both he and Berkey entered the bank wearing camouflage fatigues, body armor, helmets and masks and carrying fully automatic weapons; Duncan helped to elude authorities by burning the getaway van; Duncan drove the vehicle from which Berkey opened fire on Chief Hobbs and even handed Berkey his own weapon to assist Berkey; and, following the shootout, both Duncan and Berkey retreated to a wooded area and prepared to resist authorities by force. This conduct was made all the more danger-

ous by Duncan's use of a fully automatic machine gun. The district court weighed all of these factors in addition to the other factors listed in 18 U.S.C. § 3553(a) when arriving at Duncan's sentence and determined that a sentence at the bottom of the Advisory Guidelines range in addition to the mandatory minimum sentence under 18 U.S.C. § 924(c)(1) reached the proper balance.

A sentence within a properly-calculated Guidelines range is entitled to a presumption of reasonableness. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Even if that were not the case, we find that Duncan's sentence was reasonable in light of 18 U.S.C. § 3553(a). Duncan's conduct in the course of the robbery of the National City Bank and ensuing escape as well as his prior criminal conduct demonstrate lack of respect for the rule of law and that he posed a real and continuing danger to the public safety. In light of the seriousness of Duncan's offense and his demonstrated threat to society, we cannot say that this sentence, although substantial, was unreasonable.

### Conclusion

The district court's sentence of 457 months' imprisonment is not unreasonable in light of the factors set forth in 18 U.S.C. § 3553(a). The decision of the district court is affirmed.

AFFIRMED

No. 05-4678                                                13

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*