In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-3545

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RUBEN PORRAZ,

*Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CR 463-7 — **Virginia M. Kendall**, *Judge*.

_____

ARGUED SEPTEMBER 13, 2019 — DECIDED NOVEMBER 27, 2019

_____

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Ruben Porraz was the leader of a Chicago chapter of the Latin Kings gang for about four years. In 2018 he pleaded guilty to participating in a racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The district judge applied the base offense level for conspiracy to commit murder, factored in Porraz's criminal history, and sentenced him to 188 months in prison.

Porraz argues that his sentence was procedurally defective because he didn't kill anyone and murder wasn't a reasonably foreseeable part of the conspiracy. He also claims his sentence was substantively unreasonable because of unwarranted disparities between his sentence and sentences imposed on other Latin Kings members.

We affirm. Porraz's admitted conduct defeats his claim that murder was not a reasonably foreseeable part of his gang activities. And the judge considered and responded to his disparity arguments.

## I. Background

The Latin Kings is a hierarchical and multinational violent street gang. The gang distributes cocaine, heroin, and marijuana; and engages in assault, burglary, homicide, identify theft, and money laundering, among other unlawful activities. Members have been prosecuted within this circuit on many occasions. *See, e.g.*, *United States v. Garcia*, 754 F.3d 460 (7th Cir. 2014); *United States v. Tello*, 687 F.3d 785 (7th Cir. 2012); *United States v. King*, 627 F.3d 641 (7th Cir. 2010); *United States v. Olson*, 450 F.3d 655 (7th Cir. 2006).

Local groups of the Latin Kings are organized into "tribes" that represent specific neighborhoods and have ranked leaders. Near the top of the tribal hierarchy sits the "Inca"—the president. Ruben Porraz became a member of the 89th Street Chapter when he was only 13 years old. He rose in the ranks from soldier (the entry-level position) to Inca over a nine-year period.

As a soldier Porraz defended the chapter's territory with violence. He participated in "hood days," during which he stood with other gang members holding guns in order to

protect the territory. He also brawled with and shot at rival gang members.

In 2000 Porraz was convicted of possession of a controlled substance and imprisoned for two years. From 2002 through 2011, Porraz had no run-ins with law enforcement. He satisfactorily completed his parole and was regularly employed.

Porraz again became an active member of the Latin Kings sometime between late 2012 and early 2013. At the request of the leadership, he assumed the role of Inca of the 89th Street Chapter. He controlled the chapter's drug-trafficking activities, ensured that the chapter was well stocked with guns, and required members to participate in hood days. He collected dues and ordered his subordinates to "smash on sight" (beat up) the members who didn't pay up.

In 2016 Porraz and 19 other defendants were charged with participating in a racketeering conspiracy. Porraz was indicted on a single RICO conspiracy count under 18 U.S.C. § 1962(d). The indictment charged him with participating in the Latin Kings organization, knowing the gang engaged in murder, arson, robbery, extortion, witness tampering, and drug distribution.

Porraz pleaded guilty in 2018. In his plea declaration and at the change-of-plea hearing, Porraz admitted the following:

- He joined the 89th Street Chapter of the Latin Kings in 1993.

- He was expected to participate in and support the gang by fighting, stabbing, shooting, and killing rival gang members.

- He shot at the Latin Dragons, members of a rival gang, on five separate occasions.

- He became Inca of the 89th Street Chapter in either late 2012 or early 2013 at the request of the Latin Kings leadership.

- In his Inca role, he knew where the 89th Street Chapter stored its firearms, was responsible for protecting the neighborhood from incursions by rival gangs, and was responsible for the chapter's drug operations.

Prior to sentencing, the probation office submitted a presentence report ("PSR") to the district court. Based on the admissions in the plea declaration, the probation office concluded that U.S.S.G. § 2A1.5—the guideline for conspiracy to commit murder—governed Porraz's underlying conduct. This resulted in a base offense level of 33. U.S.S.G. § 2A1.5(a). The PSR recommended that the judge apply a criminal-history category IV, which when combined with an offense level 33 yielded a Guidelines range of 188 to 235 months in prison.

Porraz argued that § 2A1.5 should not have been used to calculate the base offense level. He claimed that murder was not within the scope of the conspiracy because he didn't kill anyone and couldn't reasonably foresee that the Latin Kings members would kill people. He emphasized that he directed "smash on sight" orders and contended that the base offense level should be 27 according to U.S.S.G. § 2A2.1(a)(2), which applies to acts of assault with intent to commit murder and attempted murder.

Porraz also argued that he should be sentenced within the range of punishment faced by codefendant Adam Flores

and similar to the sentences imposed on other Latin Kings members in an unrelated case, *United States v. Zambrano*, No. 08 CR 746-1, 2011 WL 4565796 (N.D. Ill. Sept. 25, 2011). Flores pleaded guilty pursuant to a cooperation agreement with the government, and the government agreed to recommend a 71-month sentence. Porraz identified ten defendants from *Zambrano* whose sentences ranged from 42 to 84 months in prison.

The judge concluded that the scope of Porraz's conspiracy included conspiracy to commit murder. She found that Porraz's plea admissions fatally undermined his argument that his participation in the gang's criminal activities was limited to assaults. The judge observed that it was not necessary to find that Porraz personally committed a murder or ordered a hit in order to find that he was part of a conspiracy to commit murder. As the PSR recommended, she adopted a base offense level of 33 and a criminal-history category IV, for a Guidelines range of 188 to 235 months in prison.

The judge then rejected Porraz's argument that his sentence ought to be within the same range as Flores and similar to the sentences imposed on the *Zambrano* defendants. She pointed out that the focus of the *Zambrano* case was narcotics trafficking, not violence; that Porraz admitted to different activities than did the defendants in *Zambrano*; and that Flores was a cooperating witness who did not have Porraz's criminal history. She sentenced Porraz to 188 months in prison, the bottom of the Guidelines range.

**II. Discussion**

We use a two-step process to review sentencing determinations. *United States v. Faulkner*, 885 F.3d 488, 498 (7th Cir. 2018). First, we ask whether the district court committed any procedural error, such as failing to calculate (or improperly calculating) the Sentencing Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) sentencing factors, or selecting a sentence based on clearly erroneous facts. *Id.* Second, if we find no procedural error, we review the substantive reasonableness of the sentence. *Id.* Porraz argues that his sentence was both procedurally and substantively unreasonable. We disagree, for reasons grounded in well-established conspiracy and sentencing law.

**A. Procedural Error**

We review de novo a judge's application and computation of a defendant's Sentencing Guidelines range. *United States v. White*, 737 F.3d 1121, 1139 (7th Cir. 2013). We review for clear error a judge's factual determinations underlying the application of the Guidelines—like the determination that a defendant conspired to commit murder. *United States v. Harper*, 766 F.3d 741, 744 (7th Cir. 2014). Reversal is warranted only if "after reviewing the entire record, we are left with the firm and definite conviction that a mistake has been made." *United States v. Ranjel*, 872 F.3d 815, 818 (7th Cir. 2017) (quotation marks omitted).

"[T]he essence of a conspiracy is an agreement to commit an unlawful act." *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (quotation marks omitted). For a defendant to be held accountable for the conduct of others at sentencing, that

conduct must have been (1) in furtherance of the jointly undertaken criminal activity and (2) reasonably foreseeable in connection with the criminal activity that the defendant agreed to join. *United States v. Edwards*, 115 F.3d 1322, 1327 (7th Cir. 1997).

Porraz argues § 2A2.1(a)(2) rather than § 2A1.5 should have been used to calculate his base offense level because his most serious underlying racketeering acts were his smash-on-sight orders and murder wasn't a reasonably foreseeable result of his gang activities. But we have held that the overt acts *personally committed* by a defendant do not establish the most serious underlying racketeering activity attributable to him. We have emphasized that murder can be a reasonably foreseeable result of a defendant's gang activities even if he did not kill anyone or otherwise personally participate in a murder.

In *United States v. Garcia*, we used § 2A1.5 to determine the base offense level for Luis Garcia, another Inca. 754 F.3d 460 (7th Cir. 2014). Like Porraz, Garcia pleaded guilty to committing overt acts of drug distribution. *Id.* at 484. Like Porraz, Garcia didn't admit to committing murder. But the judge found that "the use of murder as a tool to maintain the gang's reputation, protect its territory, and further its drug trade was foreseeable to [Garcia] when he joined the conspiracy." *Id.*

We affirmed Garcia's sentence. *Id.* at 488. We rejected his argument that the guideline for conspiracy to commit murder shouldn't be applied to him because he didn't kill anyone and couldn't foresee that other Latin Kings would kill anyone. *Id.* at 485. We noted that Garcia was an active gang member, both as a drug distributor and an Inca. *Id.* at 484–

85. We explained that the Latin Kings' constitution and the rules of Garcia's chapter expressly contemplated violence, including homicide, and that his duties as an Inca included protecting the chapter's territory with violence, if necessary. *Id*. at 485. "It [did] not matter that there was no evidence that [Garcia] pulled a trigger." *Id.*

*Garcia* controls this case. In his plea declaration, Porraz admitted to having been an active participant in the Latin Kings' activities, both as a drug distributor and an Inca. He acknowledged that he was responsible for protecting the chapter's territory and safeguarding the gang's guns. He knew that protecting the chapter's territory entailed shooting at rival gangs. Murder was therefore a foreseeable part of Porraz's agreement with gang members. The judge correctly applied the guideline for conspiracy to commit murder.[1]

---

[1] Even if U.S.S.G. § 2A2.1 were the proper guideline, Porraz's base offense level would likely remain the same. That guideline provides for a base offense level of 33 "if the object of the offense would have constituted first degree murder." U.S.S.G. § 2A2.1(a)(1) First-degree murder is "conduct that … would constitute first degree murder under 18 U.S.C. § 1111." *Id.* § 2A2.1 cmt. n.1. First-degree murder includes "willful, deliberate, malicious, and premeditated killing." 18 U.S.C. § 1111. If Porraz's smash-on-sight orders were assaults with intent to commit murder or attempted murder, as he argues, his admission that they were part of a plan to raise Latin Kings revenue would probably require that § 2A2.1(a)(1) be applied and he receive a base offense level of 33. Calculation errors in the context of sentencing that do not affect the base offense level are harmless. *See United States v. Westerfield*, 714 F.3d 480, 489 (7th Cir. 2013); *United States v. Crockett*, 82 F.3d 722, 730 (7th Cir. 1996).

**B. Substantive Reasonableness**

In reviewing sentences for substantive reasonableness, we do not substitute our judgment for that of a district judge, who is better situated to make individualized sentencing decisions. *United States v. Wachowiak*, 496 F.3d 744, 751 (7th Cir. 2007). We review for abuse of discretion the substantive reasonableness of a sentence, considering the judge's explanation of his reasons for imposing the sentence. *United States v. Gill*, 889 F.3d 373, 378 (7th Cir. 2018). We uphold a sentence so long as the judge offers an adequate statement of his reasons consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a). *United States v. Melendez*, 819 F.3d 1006, 1013 (7th Cir. 2016).

The Sentencing Reform Act requires a judge to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). We have held that a sentence within a properly calculated Sentencing Guidelines range is presumptively reasonable and cannot be treated as unreasonable by reference to § 3553(a)(6). *United States v. Gonzales*, 765 F.3d 732, 740 (7th Cir. 2014).

Porraz asked the judge to sentence him similarly to codefendant Adam Flores, who had not yet been sentenced. The judge responded that Flores, unlike Porraz, had not pleaded guilty to acts of violence, that Porraz had a more extensive criminal history than Flores, and that Flores had agreed to cooperate with the government.

The judge gave Porraz's codefendant-based argument more consideration than the law requires. A judge is not required to give *any* consideration to the sentencing expo-

sure of a codefendant who has not yet been sentenced. *See, e.g., United States v. Cardena*, 842 F.3d 959, 999 (7th Cir. 2016); *United States v. Sanchez*, 710 F.3d 724, 732–33 (7th Cir. 2013), *vacated on other grounds*, 571 U.S. 801 (2013). Furthermore, the distinctions the judge drew between Porraz and Flores were not unwarranted and were adequately explained. *See United States v. Duncan*, 479 F.3d 924, 929–30 (7th Cir. 2007) (holding that a sentence disparity grounded in differences among offenses to which different defendants pleaded guilty and differences in criminal history is not unwarranted); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) (holding that "a sentencing *difference* is not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation").

Finally, Porraz asked the judge to sentence him similarly to the defendants in *United States v. Zambrano*. The judge responded that the defendants whom Porraz considered comparable to himself and received sentences of between 42 and 84 months in prison admitted only to drug trafficking. But Porraz admitted to drug trafficking, shooting at rival gang members, and safeguarding the gang's weapons. The judge thus addressed each of the issues Porraz believed created unwarranted disparities and explained why they did not. The law requires no more. *Gill*, 889 F.3d at 378.

Porraz has not rebutted the presumption that his within-Guidelines sentence was substantively reasonable. We will not disturb it.

AFFIRMED