# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 06-1562, 06-1585, 06-1604

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL SPANO, SR., EMIL SCHULLO, and
   BETTY LOREN-MALTESE,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 348—**John F. Grady**, *Judge.*

———————

ARGUED JANUARY 16, 2007—DECIDED FEBRUARY 7, 2007

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge.* The three defendants whose appeals are before us were convicted along with others of a variety of federal offenses, including mail fraud, RICO, and money laundering, arising out of a massive and protracted scheme to defraud the Town of Cicero, Illinois. We affirmed the convictions but on the government's cross-appeal ordered the defendants resentenced. 421 F.3d 599 (7th Cir. 2005). Having determined that the loss caused by the fraud was $10.6 million, the district

judge had then rounded this number off to below $10 million, which reduced the defendants' guidelines sentencing ranges, and the judge imposed sentences that were within those reduced ranges. He reasoned that $10.6 million was merely an estimate, which might therefore be mistaken. We held that unless the judge thought the estimate biased, which he had not suggested he did, he had no grounds for rounding down any more than he would have had for rounding up, since reasonable estimates are proper predicates for calculating loss. *Id.* at 608.

On remand the judge corrected his error but imposed the same sentences. The defendants again appeal.

Spano had been found guilty not only of fraud and RICO violations but also of tax offenses. The judge treated the fraud and RICO offenses as one group of offenses and the tax offenses as another. The offense level for the first group under the federal sentencing guidelines was 27, and for the second 30, and the guidelines' grouping rules produced a combined offense level of 32. See U.S.S.G. § 3D1.4. This put Spano in the 135-months to 168-months guidelines range, and the judge sentenced him to 151 months for the RICO violation and gave him shorter concurrent sentences for the other offenses. Spano complains that while it was the tax offenses that drove him to level 32, the statutory maximum sentence for those offenses was only 60 months. But that is irrelevant to calculating his guidelines range. The highest guidelines range of the grouped offenses is the defendant's guidelines range even if the top of the range exceeds the statutory maximum for the offense in question, provided that his sentence does not exceed the statutory maximum for the count or counts of conviction on which it was imposed. U.S.S.G. § 3D1.3(a) and Application Note 2; § 3D1.4; § 5G1.2(d) and Applica-

tion Note 1; *United States v. De la Torre*, 327 F.3d 605, 609-11 (7th Cir. 2003); *United States v. Griffith*, 85 F.3d 284, 289-90 (7th Cir. 1996). (Although it is not material in this case, consecutive sentences if otherwise proper are to be used to jack up the defendant's overall sentence into the higher guidelines range when the sentence imposed on the count carrying the highest statutory maximum is below that guidelines range, provided of course that none of the consecutive sentences exceeds the statutory maximum sentence for the crime for which the sentence is imposed. *Id*. at 289 n. 2; see also U.S.S.G. § 5G1.2(d) and Application Note 1.)

Spano argues that this scheme is irrational. The argument misses the mark. Even though the guidelines are no longer mandatory, the judge must compute the guidelines range. He is not bound to sentence within it, but if he does the sentence is presumed by us (that is, by the appellate court) to be reasonable. *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110-11 (7th Cir. 2006); *United States v. Mancari*, 463 F.3d 590, 597 (7th Cir. 2006). Spano points to no circumstances that make *his* sentence unreasonable; his contention is that the *guidelines* are unreasonable in determining the sentencing ranges as they do, that is, by permitting a guidelines range that exceeds the statutory maximum to influence the guidelines range for another offense of conviction that has a higher statutory maximum. *United States v. Booker*, 543 U.S. 220 (2005), and the cases following it, do not invalidate the guidelines. E.g., *United States v. Mykytiuk*, 415 F.3d 606, 607-08 (7th Cir. 2005); *United States v. King*, 454 F.3d 187, 196 (3d Cir. 2006); *United States v. Crosby*, 397 F.3d 103, 111-12 (2d Cir. 2005). Exercises of lawfully delegated legislative authority, *United States v. Booker*, *supra*, 543 U.S. at 241-43 ("the Commission

is an independent agency that exercises policy-making authority delegated to it by Congress"); *United States v. Williams*, 408 F.3d 745, 756 n. 7 (11th Cir. 2005), particular guidelines can be invalidated by a court only if they violate the defendant's constitutional rights. *Booker* holds that the sentencing judge is not bound by the guidelines—they are merely advice to him, and he is not required to take the advice—and so he can (and in some cases must, because he *is* bound by the sentencing considerations set forth in 18 U.S.C. § 3553(a)) sentence outside the guidelines range if the guidelines sentence would not fit the circumstances of the defendant's case. By failing to show that there is something special about his situation that makes his guidelines sentence unreasonable, Spano is left only with a claim that allowing the guidelines range for one crime to influence the sentence for another is unreasonable, that is, a violation of due process; and we cannot think of any reason why it should be. Spano's tax offenses were more serious, and therefore merited a heavier sentence, than they would have been had they not been incident to a RICO offense that involved corrupting a government.

Schullo received a sentence of 71 months, which was the top of the guidelines range applicable to him. He argued at sentencing that he should receive a lower sentence because "life in prison for a police officer [he is a former police chief of Cicero] . . . is very difficult," as the other criminals don't like police. The judge rejected the argument, saying that the sad lot of a policeman inmate "is not something that in my view should be considered by way of reducing the sentence that would otherwise be appropriate. There should be no favorable treatment of a dishonest policeman simply because his prison time might be harder than average."

In effect Schullo is arguing that the severity of a prison sentence has two dimensions: its length, and the harshness of the conditions, and that the harsher the conditions the shorter the sentence should be. There is enough merit to the argument to allow a sentencing judge to take it into account, *Koon v. United States*, 518 U.S. 81, 111-12 (1996), but not enough merit to make a judge who refuses to do so unreasonable, at least when the sentence he imposes is within the guidelines range. It would complicate sentencing enormously to require that the length of every sentence vary by the conditions of confinement, especially since those conditions vary widely across federal prisons and can change over the course of a defendant's imprisonment because prisoners are moved around both in and between prisons. The Federal Bureau of Prisons decides where to house a federal prisoner, and its decision may change over the course of his imprisonment. The prison decides where within the prison to place a particular inmate at a particular time. The sentencing judge thus doesn't know the conditions in which the defendant will serve all or most or some of his sentence.

And though an endangered prisoner might find himself in a segregation unit, he might instead find himself in a minimum-security prison where he would face fewer threats from the other prisoners. Minimum-security prisons tend to house white-collar offenders, who are less likely either to be violent or to harbor animosity toward police officers, who probably had little to do with their apprehension. Schullo is a white-collar criminal, so there is no reason to think him ineligible for such a prison.

We come finally to Loren-Maltese, the former Town President (i.e., mayor) of Cicero. She complains because the $10.6 million loss attributed to her as to the other defen-

dants occurred in part before she joined the conspiracy, and also because the judge made a four-level upward departure in her guidelines range, from 57 to 71 months to 87 to 108 months, for what he considered her extraordinary abuse of trust. The judge thought her to blame for the earlier loss because when she joined the conspiracy she helped to cover it up. Generally, the sentence of a late-joining conspirator is not enhanced because of the crimes that other conspirators committed before he joined. U.S.S.G. § 1B1.3, Application Note 2; *United States v. Diamond*, 378 F.3d 720, 726-27 (7th Cir. 2004). But if he helps to cover up those crimes, he becomes liable for a sentencing enhancement as an aider and abettor. U.S.S.G. §§ 1B1.3(a)(1)(A), (B); *United States v. Irwin*, 149 F.3d 565, 570-71 (7th Cir. 1998); *Cupit v. Whitley*, 28 F.3d 532, 541 (5th Cir. 1994); *United States v. Carreon*, 11 F.3d 1225, 1235-38 and n. 60 (5th Cir. 1994); *United States v. Ray*, 688 F.2d 250, 252-53 (4th Cir. 1982). Loren-Maltese became an aider and abettor when she covered up the earlier crimes.

The four-level upward departure was an error, but a harmless one. The proper procedure under *Booker*, as we have explained in a number of cases, is for the sentencing judge first to compute the guidelines range and then to apply the sentencing factors in 18 U.S.C. § 3553(a) in order to decide whether the sentence should be inside or outside the range. E.g., *United States v. Robinson*, 435 F.3d 699, 700-01 (7th Cir. 2006); *United States v. Cunningham*, 429 F.3d 673, 675 (7th Cir. 2005). Departures create new guidelines ranges and thus deflect the sentencing judge from consideration of the statutory sentencing factors. For having exercised discretion to make the departure and find a new range, he is unlikely to think a further exercise of discretion necessary before he can be confident that a

sentence within the new range is the proper sentence. But it is necessary, because he has to apply the statutory sentencing factors if he is asked to do so by a party.

Departures were an essential safety hatch in the pre-*Booker* world because the guidelines were mandatory then, so that every sentence (except statutory maximum and minimum sentences) had to be fitted into the guidelines scheme. With the guidelines advisory, the departure safety hatch, constrained as it was by the requirement that departures be consistent with the structure of the guidelines, e.g., *United States v. Castro-Juarez*, 425 F.3d 430, 434 (7th Cir. 2005), is a superfluous way station en route to application of the more capacious statutory sentencing factors. In short, "after *Booker*, which rendered the Guidelines advisory, departures have become obsolete." *United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006).

But the judge's error was harmless; for that matter, if he erred in thinking Loren-Maltese responsible for the entire $10.6 million loss, that was harmless too. It is apparent that he thought she should be punished severely for corrupting the office of mayor and that she was blameworthy for having covered up the malefactions of the earlier joiners of the conspiracy. These judgments were proper, sensible exercises of discretion, well within the boundaries set by section 3553(a). The judge has made abundantly and persuasively clear why he thinks a guidelines sentence made without consideration of Loren-Maltese's egregious abuse of trust would fail to comply with the statute. No more is required.

AFFIRMED

A true Copy:

    Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*