In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3313

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICHARD E. BROWN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 3:11CR00011-001 — **Richard L. Young**, *Chief Judge.*

ARGUED FEBRUARY 25, 2013 — DECIDED OCTOBER 11, 2013

Before BAUER, POSNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* For 20 years Richard Brown was the office manager and accountant for a cluster of small businesses in southern Indiana owned by the Walker family. In 2009 the family patriarch discovered that Brown was embezzling money by using company credit cards and writing company

checks to pay for personal items and expenses. An audit revealed that during the course of at least a decade, Brown had stolen hundreds of thousands of dollars, gradually putting the businesses in financial straits and destroying their credit.

A federal grand jury indicted Brown on more than 150 counts of wire fraud, mail fraud, and tax fraud. Brown pleaded guilty to a single count of each of these crimes. The advisory guidelines sentencing range was 21 to 27 months' imprisonment, but the district judge thought that was far too low. The judge settled on a sentence of 60 months, a significant variance from the top of the range. Judgment was entered and Brown appealed.

Weeks later, without warning, the judge filed an amended judgment and attached a written "statement of reasons" to "supplement" the reasons he had given in open court for the sentence. Apparently applying "departure" analysis, the judge recalculated the guidelines range, adding upward adjustments based on the amount Brown embezzled, the duration of the scheme, and the vulnerability of one of the victims. On this revised calculation, the guidelines range was 41 to 51 months. Compared to *this* range, the 60-month sentence seemed like a less significant variance from the guidelines.

On appeal Brown argues that the district judge violated Rule 32(h) of the Federal Rules of Criminal Procedure by failing to give notice of his intent to apply upward "departures." He also argues that his 60-month sentence is substantively unreasonable.

We affirm. The judge's belated effort to adjust the guidelines range introduced complications but did not violate

Rule 32(h). That rule requires "reasonable notice" when the district court is "contemplating" a departure from the sentencing guidelines. FED. R. CRIM. P. 32(h). But "[t]he old regime of 'departures' is defunct," *United States v. Barlett*, 567 F.3d 901, 909 (7th Cir. 2009), and Rule 32(h) does not apply to an upward variance from the advisory guidelines range, *see Irizarry v. United States*, 553 U.S. 708, 714 (2008). Because departures are obsolete, Rule 32(h) no longer has any work to do.

Moreover, because the judge's written statement of reasons was filed *after* Brown appealed, the court lacked the power to substantively alter the sentence because jurisdiction had shifted to this court. Brown's sentence did not change, though the rationale for it certainly did. To the extent that the judge's recalculation of the guidelines range amounts to a substantive change, it is a nullity because the court lacked jurisdiction to make the change. If the recalculation simply introduced an inconsistency between the written statement and the oral pronouncement of the sentence, the oral pronouncement controls. Either way, we disregard the written statement of reasons. Considered in light of the court's oral pronouncement of sentence, the 60-month sentence is reasonable.

## I. Background

From 1989 until 2009, Brown worked as the office manager, bookkeeper, and accountant for a group of small businesses in Evansville, Indiana, owned by the Walker family. In that capacity he was authorized to write company checks and use company credit cards for business purposes. Unbeknownst to the Walkers, for many years Brown abused the trust they

placed in him by paying himself unauthorized bonuses. He also repeatedly wrote company checks and used company credit cards for personal expenses like gas, household items, and home repairs. In addition to making these personal purchases, Brown also used company funds to pay the creditors of his church, the Oak Hill Christian Center, where he served as the bookkeeper.

Not surprisingly, Brown failed to report any of this extra income on his federal tax returns. He also failed to report money he earned doing work for the church. Instead, he had his compensation made payable to the Oak Hill Christian Center and placed in tithing envelopes to conceal the income, and then claimed charitable deductions for the amounts.

Brown's crimes came to light in October 2009 while he was on vacation. Lowell Walker, the family patriarch and the primary owner of the Walker enterprises, intercepted an invoice detailing the use of company checks to pay for expenses relating to Brown's rental properties. This precipitated an internal audit, which revealed the extent of Brown's misuse of company funds. When Brown returned from vacation, the Walkers confronted and fired him. Brown claimed that he was simply reimbursing himself for promised pay raises that he never received.

A federal grand jury indicted Brown for embezzlement dating from 2004 to October 2009, when he was fired. He was charged in a superseding indictment with 135 counts of wire fraud, 15 counts of mail fraud, and 5 counts of tax fraud. He agreed to plead guilty to one count each of wire and mail fraud and one count of tax fraud. The plea agreement called for

restitution to the Walker family in the amount of $151,233 and $38,675 to the Internal Revenue Service for tax losses. The district court accepted the guilty pleas.

Based on the contents of the plea agreement and the presentence report, Brown's offense level under the sentencing guidelines was 16, which when combined with a criminal history category I yielded an advisory guidelines range of 21 to 27 months' imprisonment. At the sentencing hearing, the court accepted this guidelines calculation and then heard testimony from three witnesses who spoke on Brown's behalf. All three were friends from the Oak Hill Christian Center; one was the pastor of the church. They extolled Brown's extensive service to the church and said they believed him to be an honest, loyal man.

The court also heard from two members of the Walker family: Barbara Wilson, the co-owner who conducted the internal audit; and Lowell Walker, the head of the family. Wilson testified about Brown's elaborate method of concealing his embezzlement and how his deceit placed the family businesses in a precarious financial situation and destroyed their credit. Wilson, an experienced auditor with a master's degree in business administration, also testified that according to her audit, Brown embezzled company funds on many hundreds of occasions totaling approximately $667,000. That total may understate the loss; Wilson explained that because of missing records, her audit went back only as far as 1996.

When it was his turn to address the court, Brown mostly described what he'd been up to since being fired by the Walkers: He'd taught at a technical college, provided services

to the church, obtained a master's degree and minister's license, and served as the legal guardian for a 70-year-old cousin who was mentally handicapped.

Before imposing sentence the district court thoroughly examined the sentencing factors listed in 18 U.S.C. § 3553(a), placing special emphasis on the sophisticated nature of Brown's embezzlement scheme, its long duration, and the deep breach of trust that his conduct entailed. The judge accepted the results of the Walker family's internal audit and explained that the loss—more than $600,000—was significant for a small business. On the other side of the ledger, the judge recognized that Brown had no criminal history and had a great deal of support from members of his church community, including "somewhere between 40 and 50" people who wrote letters to the court on his behalf. These letters, the court said, stressed Brown's "high moral character, … his fairness, his devotion to his church, his community, [all] the charitable things that he was involved with."

In the end, however, the judge contrasted the altruistic picture painted by Brown's supporters with the admitted facts of the case. "It's almost like you have two personalities," the judge said. "One is with your church," and the other is "a greedy individual who just wants to enrich himself at the expense of others." After touching on the remaining § 3553(a) factors, the judge imposed a sentence of 60 months concurrent on each count of wire and mail fraud and a concurrent 36 months on the tax-fraud count. The judge explained that this variance from the guidelines range was based on "the

[§] 3553(a) factors and the extensive nature and duration of the defendant's criminal activity."

The court entered judgment on October 1, 2012. Brown filed a notice of appeal four days later. On October 24, 2012, the district court issued an amended judgment and attached a written statement of reasons explaining the sentence. The purpose of the amendment was to correct a clerical mistake, but the only difference between the original and amended judgments was that the latter waived interest on the restitution award. In the attached statement of reasons, however, the judge sought to supplement his reasons for the sentence announced in open court. In an apparent effort to apply departure analysis, the judge recalculated Brown's guidelines range.

It's not entirely clear what the judge was trying to accomplish. He began by noting that the original guidelines range was 21 to 27 months and then stated as follows: "After giving respectful consideration to the Sentencing Guidelines, the Court believes the guidelines do not adequately reflect the seriousness and entirety of the defendant's conduct." The judge went on to find that Brown's offense conduct warranted the following upward adjustments to his offense level: a two-level increase for the amount of the loss (more than $600,000); a two-level increase for the extended duration of the scheme; and a two-level increase for "a vulnerable victim" (referring to Lowell Walker's lack of computer skills). These upward adjustments boosted Brown's offense level from 16 to 22. The judge concluded that "an offense level of 22 provides a sentencing range of 41 to 51 months and more adequately

reflects the defendant's criminal conduct in this matter." The judge then re-reviewed the § 3553(a) factors and reiterated that 60 months in prison was an appropriate sentence under all of the circumstances.

## II. Discussion

Brown challenges the district court's sentencing procedure and the substantive reasonableness of the sentence. We review the procedural challenge de novo. *United States v. Annoreno*, 713 F.3d 352, 356 (7th Cir. 2013). Our review of the substantive reasonableness of the sentence is more deferential; we look only for an abuse of discretion. *See United States v. Conaway*, 713 F.3d 897, 901 (7th Cir. 2013); *Annoreno*, 713 F.3d at 355–56.

Brown's principal argument is that the district court violated Rule 32(h) by failing to give notice before applying "departures" to recalculate his guidelines range in the post-judgment statement of reasons. Rule 32(h) provides that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure." FED. R. CRIM. P. 32(h).

By its terms Rule 32(h) applies only to *departures* from an otherwise applicable guidelines range. *See id.*; *see also Irizarry*, 553 U.S. at 714. " 'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry*,

553 U.S. at 714. Since *Booker*[1] we have repeatedly emphasized that formal departure analysis is obsolete. *See, e.g.*, *United States v. Lucas*, 670 F.3d 784, 791 (7th Cir. 2012); *United States v. Spano*, 476 F.3d 476, 480 (7th Cir. 2007); *United States v. Walker*, 447 F.3d 999, 1006 (7th Cir. 2006); *United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006). We reiterate the point here.

When the guidelines were mandatory, departure analysis was the only way a district court could impose a sentence outside the otherwise applicable guidelines ranges. *Irizarry*, 553 U.S. at 714; *Spano*, 476 F.3d at 480; *United States v. Castro-Juarez*, 425 F.3d 430, 434–35 (7th Cir. 2005). By making the guidelines advisory, *Booker* removed those constraints. Now the district court's obligation is simply to calculate the guidelines range correctly and arrive at a reasonable sentence after weighing the sentencing factors in § 3553(a), varying upward or downward from the guidelines range in its discretion. *United States v. Munoz*, 610 F.3d 989, 994 (7th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)); *Spano*, 476 F.3d at 480.

That isn't to say that departures are completely useless; "district courts can still take guidance from the departure provisions in the guidelines and apply them by way of analogy when assessing the § 3553(a) factors." *Lucas*, 670 F.3d at 791. But the only boundaries on the court's *Booker* discretion are the more capacious § 3553(a) factors. So analogizing to departures is just one way for the district court to explain a sentence; it has no legal force or effect.

---

[1] *United States v. Booker*, 543 U.S. 220 (2005).

With the demise of departures as a constraint on the district court's sentencing discretion, Rule 32(h) has lost all utility. *See Walker*, 447 F.3d at 1006–07. The rule does not apply to variances from the guidelines range. *See Irizarry*, 553 U.S. at 714–16; *United States v. Gooden*, 564 F.3d 887, 891 (7th Cir. 2009) (per curiam); *Walker*, 447 F.3d at 1006–07. Likewise, when a judge chooses to use departure analysis "by way of analogy" to help explain a sentence that varies from the guidelines, *Lucas*, 670 F.3d at 791, the rule does not apply.

Accordingly, if there was error below, it was not the district court's failure to give notice under Rule 32(h), it was the court's effort to recalculate Brown's guidelines range after the notice of appeal was filed.[2] At the sentencing hearing, the district court correctly calculated the guidelines range and then varied upwardly based on the § 3553(a) factors, explaining why the sentence was appropriate. The court's post-appeal statement of reasons needlessly introduced complication.

---

[2] The government maintains that the district court did not recalculate the guidelines range. That position is hard to reconcile with the record; although as we've said, it's not entirely clear what the judge was trying to do in his written statement of reasons. At the sentencing hearing, the judge accepted the original guidelines range of 21 to 27 months based on an offense level of 16. In the statement of reasons attached to the amended judgment, the court for the first time imposed three two-level increases to reach an offense level of 22, which raised the guidelines range to 41 to 51 months. The judge either recalculated the guidelines range or was using departure analysis to more fully explain his decision to impose an above-guidelines sentence. We can't tell which. Either way, for the reasons explained in the text, we disregard the post-judgment written statement of reasons.

Though neither Brown nor the government has recognized it, the real problem with the court's recalculation of the guidelines range is that the judge lacked the power to amend his decision once the case was in this court. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam); *see also United States v. Burton*, 543 F.3d 950, 952 (7th Cir. 2008); *United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008). "Only one court at a time has jurisdiction over a subject." *McHugh*, 528 F.3d at 540. The point of the rule is to "avoid the confusion of placing the same matter before two courts at the same time and to preserve the integrity of the appeal process." *In re Teknek, LLC*, 563 F.3d 639, 650 (7th Cir. 2009).

There are a few exceptions. "Ancillary issues, such as attorney's fees, may still be dealt with by the district court even after an appeal has been lodged[, and] [t]he district court may also issue orders 'in aid of the appeal, to correct clerical mistakes under [FED. R. CRIM. P. 36], or in aid of execution of a judgment that has not been stayed or superseded.' " *Burton*, 543 F.3d at 952 (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1240 (7th Cir. 1986)). Also, we held in *Burton* that the district court may file a written sentencing memorandum more fully explaining the sentence "up to the time when the judgment is entered on its docket, and even thereafter, if a proper post-judgment motion has been filed." *Id.* at 953. But a later-filed sentencing memorandum "cannot effect a substantive change from the [sentence] announced at the hearing." *Id.*

Thus, a written sentencing statement filed after the sentencing is permissible if it simply "replicates" or "expands on the judge's reasoning without changing the ultimate judgment." *Id.* But the district court is "without authority to make any substantive change in the sentence after the appeal [i]s lodged in this court."[3] *Id.*

Here, the judge filed the written statement of reasons sua sponte, after the notice of appeal was filed, as an attachment to an amended judgment correcting a clerical error. The written statement purported to recalculate the guidelines range and thus differed in substance from the judge's oral explanation of the sentence. Because jurisdiction had shifted to this court, the judge lacked authority to make this substantive change, so we will disregard it. *See Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995) (an action taken by the district court without jurisdiction is a "nullity").

Even if we construed the recalculated range as a nonsubstantive change in the rationale for the sentence—after all, the 60-month sentence was unaffected—the judge's written explanation is plainly at odds with his oral statement from the bench. In cases of conflict between the written and oral pronouncement of sentence, the oral pronouncement controls. *See United States v. Cephus*, 684 F.3d 703, 709 (7th Cir. 2012) ("What the judge says in sentencing a defendant takes prece-

---

[3] In *Burton* we alluded to the difficulty of classifying a later-filed written statement of reasons as a substantive change or merely a nonsubstantive elaboration of the reasons for the sentence. *United States v. Burton*, 543 F.3d 950, 953 (7th Cir. 2008). Because of this difficulty, we discourage the use of these statements after the notice of appeal has been filed.

dence over the written judgment" when the two conflict.); *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2008) ("If an inconsistency exists between an oral and the later written sentence, the sentence pronounced from the bench controls." (internal quotation marks omitted)).

So we evaluate the reasonableness of the 60-month sentence by reference to the court's oral statement alone, without regard to the later-filed written statement of reasons. Our review is deferential. Brown's main attack on the sentence is that it varies too greatly from the original guidelines range. This misunderstands the scope of the district court's discretion. "The judge's task is to choose a reasonable sentence." *Bartlett*, 567 F.3d at 909. A sentence is reasonable "if the district court 'gives meaningful consideration to the factors enumerated in … § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case.' " *United States v. Boroczk*, 705 F.3d 616, 623 (7th Cir. 2013) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Judges "need not—indeed *must* not—begin with a presumption in favor of a Guideline sentence." *Bartlett*, 567 F.3d at 909. So just as "there is no need to start from the perspective that an in-range sentence usually is best, there is also no need to explain why some different sentence is better." *Id.* In other words, "a sentence cannot be called 'unreasonable' just because the judge explains why he chose that sentence, rather than explaining his decision from the Guidelines' perspective." *Id.*

The district court gave meaningful consideration to the advisory guidelines range and each of the § 3553(a) factors, giving special weight to the aggravated nature and circumstances of the offense. The court was well within its discretion to emphasize these factors. The three counts of conviction hardly captured the scope and duration of the scheme. Brown stole from his employer for many years causing significant losses. Over time he dealt a serious financial blow to these small family businesses and damaged their credit. Brown quibbles that the court gave insufficient weight to his church work and service to others. But the court meaningfully considered Brown's service to his church and his support from the church's members and simply discounted these factors—not an unreasonable approach based on the double life that Brown had led. Moreover, the court distinguished Brown from other defendants who may turn to embezzlement in response to catastrophic family events or desperate personal circumstances; the court concluded that Brown's motive was pure greed.

Finally, Brown argues that the district court failed to account for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As the qualifier "unwarranted" reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances. *See United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("After all, § 3553(a)(6) disallows '*unwarranted sentence disparities*' (emphasis added), not all sentence differences."). And of course sentencing disparities become a point of concern only when the sentences being compared

involve similar conduct and defendants with similar records. Brown compares his above-guidelines sentence to other cases involving within-guidelines sentences for wire- and mail-fraud convictions. But he does not explain how the cases involve *conduct* similar to his conduct here; a different sentence for the same charge does not alone raise any concern about unwarranted disparities under § 3553(a)(6). Brown's above-guidelines sentence was reasonable.

AFFIRMED.