In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2522

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID A. BRIDGEWATER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 19-cr-40012 — **Staci M. Yandle**, *Judge.*

ARGUED JANUARY 16, 2020 — DECIDED FEBRUARY 19, 2020

Before FLAUM, MANION, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* David Bridgewater pleaded guilty to
one count of soliciting an obscene visual depiction of a minor
in violation of 18 U.S.C. § 2252A(a)(3)(B)(i). Federal law re-
quired a mandatory-minimum Guidelines sentence of 60
months in prison. The district court deviated from the Guide-
lines to 78 months to account for a charge of attempted entice-
ment of a minor that the government dismissed in exchange
for his guilty plea. That conduct, the court found, aggravated

the nature and circumstances of the offense of conviction. The court therefore sentenced above the Guidelines range to holistically address Bridgewater and his crime in a way the mandatory-minimum Guidelines range did not. Bridgewater now appeals his sentence, principally arguing that it is substantively unreasonable because basing it—even in part—on dismissed conduct creates systemwide disparity. We affirm.

## I. Background

In January 2019, David Bridgewater contacted a boy who he thought was named "Stephen" on Grindr, an online dating application. Stephen, however, was really an undercover FBI agent participating in a sting operation. The following federal child exploitation investigation and prosecution ensued.

### A. Investigation

After exchanging some initial messages, Stephen identified himself as a fifteen-year-old boy from Marion, Illinois. Bridgewater described himself as a forty-five-year-old man who lived in Anna, Illinois. Quickly, Bridgewater shifted the conversation to sexual matters and asked Stephen if he was circumcised. He also asked Stephen to send him a picture to prove he was real. The two then agreed to text via the Google voice application.

During the subsequent encounter, Stephen sent a purported picture of himself, to which Bridgewater replied: "[explicative] you are cute." Bridgewater told Stephen he wanted to make out and perform oral sex on him. Stephen said he would prefer "oral and hands first," and Bridgewater agreed, on the condition that he could "see it and touch [Stephen's] butt." Bridgewater questioned Stephen whether he was real or not, inquiring: "You're not an undercover cop or detective

or law enforcement?" Stephen assured Bridgewater he was not a police officer, and the two switched to talking about Stephen's living arrangements, hobbies, and interests. Bridgewater asked if Stephen would send him a "sneak peak," requesting a picture of his "tummy and pubic area" and penis. They agreed to carry on their conversation and meet in person the following day.

As the two exchanged messages the next day, they discussed meeting at a McDonald's in Marion after Stephen got out of school. Bridgewater asked Stephen to call him when he was on his way to meet him. Later that afternoon, Stephen texted Bridgewater to tell him he was en route to the McDonald's, and Bridgewater noted that he would be there in several minutes. Upon Bridgewater's arrival, he texted Stephen that he was parked behind the McDonald's. When agents approached Bridgewater in his vehicle, he saw them and drove away from the parking lot. The agents followed Bridgewater and executed a traffic stop.

The agents asked Bridgewater if he would talk to them and he agreed. Bridgewater admitted that he had met Stephen on Grindr the previous day and that he had traveled to Marion to meet him. Bridgewater denied meeting Stephen for sex, although he agreed he had given Stephen that impression and it would certainly appear that way to anyone else. Bridgewater also admitted that Stephen had told him he was fifteen and that he had sent pictures of himself to Stephen. Bridgewater insisted that he was not going to perform oral sex on Stephen but was instead going to counsel him regarding his risky behavior. When questioned about the ongoing sexual nature of the communications, Bridgewater stated he only continued this way to "keep the conversation going." When

asked, Bridgewater conceded that he was worried Stephen was an undercover police officer. The agents seized Bridgewater's cell phone and released him pending further investigation.

### B. Prosecution

In nearly two weeks' time, the government charged Bridgewater with one count of attempted enticement of a minor in violation of 18 U.S.C. § 2422(b) and one count of soliciting an obscene visual depiction of a minor in violation of 18 U.S.C. § 2252A(a)(3)(B). Approximately a week later, agents arrested Bridgewater.

After his arrest, the agents confronted Bridgewater with information recovered from his phone, including what appeared to be a thirty-second video of a thirteen to sixteen-year-old male with his genitals exposed. Bridgewater denied ever viewing the video and told the agents that he did not know where it came from. The agents also questioned Bridgewater about a picture they found on his phone of a nude male who appeared underage. Bridgewater identified the individual as "Eli" but said he did not know his last name. Bridgewater said he believed Eli was eighteen years old and that they had exchanged nude photographs in the past. Bridgewater also asserted that he was not sexually attracted to minors.

Bridgewater eventually pleaded guilty to one count of soliciting an obscene visual depiction of a minor. The parties entered into a plea agreement wherein Bridgewater waived his appeal rights except for his right to challenge the substantive reasonableness of a sentence that "is in excess of the Sentencing Guidelines as determined by the Court (or any applicable

statutory minimum, whichever is greater)." The district court accepted Bridgewater's guilty plea, and the parties prepared for sentencing.

### C. Sentencing

At sentencing, the district court adopted the factual findings and Guidelines calculations contained in the Presentence Investigation Report (PSR) prepared by a federal probation officer. Those included determinations that Bridgewater's offense level was twenty-one and his criminal history category was I. Ordinarily, the court noted, a level 21-I offender would have a Guidelines range of 37–46 months imprisonment but because of the 60-month mandatory minimum sentence, Bridgewater's Guidelines range was 60 months. Both the government and Bridgewater recommended a sentence of 60 months. The district court disagreed and imposed a 78-month sentence.

The district court thoroughly explained its reasoning for imposing an above-Guidelines sentence, indicating that its sentence took into consideration the dismissed charge of attempted enticement of a minor. As the court stated:

> Soliciting an obscene visual depiction of a minor. That is the charge. And there is a statutory minimum sentence that is required for that charge of five years, or 60 months. It is more than the actual calculated guideline range based on all of the other factors in the sentencing guidelines. Many times, if not most times, I have found statutory minimums and certainly sometimes maximum that have been imposed by Congress, and not - - most of them or some of them not related to any em-

pirical study by the Sentencing Commission to be un-
duly harsh and not consistent with the Section 3553(a)
factors and the purposes of sentencing. That is nor-
mally my judgment. But that's not my judgment in this
case. And the reason it's not my judgment in this case
is because the specific offense conduct underlying the
solicitation of a visual depiction of a minor is that you
made contact with someone who you believed to be a
15-year-old male and, after a little conversation or a
back-and-forth, you asked him to send a picture, and
that a picture in fact was sent. That pretty much is the
basis for the charge that you pleaded guilty to.

And if that were all that happened, if that were the only
-- if those were the only relevant facts to the statutory
factors and to the purposes of sentencing then I would
feel that the statutory minimum was either appropriate
or could -- and may actually be more than I thought
was appropriate.

The problem is, Mr. Bridgewater, your conduct went
beyond that, and I cannot bury my head in the sand
and uphold my responsibility to consider the relevant
information that impacts the purposes of sentencing.
There is uncharged conduct, or conduct involving a
count that was dismissed in this case, that although
that count was dismissed, the underlying information
in the offense conduct is detailed in the Presentence In-
vestigation Report. It is reliable, as set forth in the
Presentence Investigation Report, and it has not been
disputed. And I believe that, as a result, it's been estab-
lished by a preponderance of the evidence -- in other
words, I find that the details set forth in paragraphs 10,

11, and 12 that encompass what your total conduct was, occurred more likely than not likely. And because of that, to the extent that it impacts the nature and circumstances of the offense and, as a result, impacts the purposes of sentencing, I think it is significant and I am considering it. And I have to consider it, and that is what I am considering.

I think – and not that I think – both the Supreme Court of the United States and the Seventh Circuit Court have held that it is appropriate for me to do so. The Supreme Court in the *United States Versus Watts* case, and the Seventh Circuit, had a chance to reconsider the same in 2017 in a case which was also a case in which I sentenced in this District Court, *United States versus Holton*.

And basically, under those two cases, what they represent is that the Supreme Court has authorized judges to consider at sentencing criminal conduct that is relevant to the offense of conviction, as long as that conduct has been proved by a preponderance of the evidence. And that exercising this discretion does not violate a defendant's constitutional rights because – and this is the important distinction – sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increases sentence because of the manner in which he committed the crime and conviction.

It is the manner in which you committed the crime of conviction, Mr. Bridgewater, that merits and warrants a sentence above the statutory minimum in this case. The manner in which you committed the crime and those factors are detailed in paragraphs 10, 11, and 12

of the Presentence Investigation Report. And because that is a sealed report, I do not believe it is necessary for me to detail that and read those paragraphs out. But the parties have that information.

And that manner of the criminal conduct and those details of the sequence of events, which essentially amount to your attempted enticement of a minor and informing that minor of your sexual intentions, and then travelling to Marion, Illinois, to meet that minor and to carry out those intentions are aggravating factors that are not accounted for not only in the calculated guideline range but even the statutory minimum, in my judgment.

And that is true even in light of admitted mitigating factors which I have also considered, and those include: No criminal history in the past; those include factors in your upbringing that I think do have bearing on the purposes of sentencing and perhaps what brought you to this point; the fact that you never had a relationship with him; you were bullied as a child; sexually abused yourself; have many medical challenges, including HIV which you have battled for over 20 years; all of those things – you are an educated man; you were gainfully employed up until you suffered those injuries.

And I do think those things mitigate and are mitigating factors, but they don't outweigh the aggravating factors in this case. Because of those aggravating factors, I think there is a need for me to impose a sentence which is specifically designed to and intended to deter future

criminal conduct, conduct of this nature, of any criminal nature, and that there is a need to protect the public from future crimes by you. There's also a need to avoid unwarranted sentence disparities. And sentence disparities, meaning sentences for other offenders or defendants who have conducted themselves similarly. In other words, who have engaged in similar conduct.

And the guidelines, even the statutory minimum that applies to the solicitation of an image case, don't really address your specific conduct. And so I think that if I were not to sentence with those factors in mind, that would result in an unwarranted disparity.

And so I like I said, I have arrived at this point with difficulty, but needing to be true and honest to my ultimate duty which is to make sure that I impose a sentence which is sufficient, but not greater that necessary, to address the goals of sentencing and that reflect the statutory factors. I have concluded that a sentence of 78 months is warranted.

And so, having considered all the information in the Presentence Investigation Report, including guideline computations and factors set forth at 18 U.S.C., Section 3553(a), and pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that the defendant David A. Bridgewater is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 78 months.

The district court entered judgment in July 2019. This timely appeal followed.

## II. Discussion

Bridgewater argues his sentence is substantively unreasonable considering its disparity with other sentences and the lack of evidence that he would recidivate. He additionally contends that the district court's reliance on dismissed conduct violated his rights to due process and a jury trial. The government retorts that Bridgewater waived his argument that his sentence was disparate with others, but in any event, his sentence was reasonable. Further, the government points out that Supreme Court and Circuit precedent foreclose Bridgewater's constitutional claim. Because the parties dispute the standard of review, we begin there, before turning to the challenge to the district court's analysis of the statutory sentencing factors and ending with the constitutional claim.

### A. Standard of Review

The parties contest the appropriate standard we should apply to review the substantive reasonableness of Bridgewater's sentence. Bridgewater asserts that we should apply abuse of discretion, while the government counters in the main that we should not review the claim at all because Bridgewater waived his disparity argument. We agree with Bridgewater that he did not waive his challenge to the substantive reasonableness of his sentence, and we thus review it for abuse of discretion.

In support of its position, the government cites *United States v. Modjewski*, 783 F.3d 645, 654–55 (7th Cir. 2015) and *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013). In *Garcia-Segura*, we "encourage[d] sentencing courts [after imposing sentence] to inquire of defense counsel whether

they are satisfied that the court has addressed their main arguments in mitigation. If the response is in the affirmative, a later challenge for failure to address a principal mitigation argument … would be considered waived." 717 F.3d at 569. In the last sentence of that very paragraph, however, we noted that "[a]n affirmative answer … would not waive an argument as to the merits or reasonableness of the court's treatment of the issue." *Id.*

Here, Bridgewater conceded in his sentencing memorandum that a 60-month mandatory minimum sentence would not result in unwarranted disparities. At the hearing, the district court justified its 78-month sentence in part by attempting to avoid sentencing disparities. The court then asked defense counsel whether counsel was "satisfied that the Court addressed your main arguments in mitigation?" Counsel responded: "Yes, your honor," without raising any other issues. The government views this exchange as the court specifically inquiring whether Bridgewater had any additional unaddressed sentencing mitigation arguments.

The government's position runs afoul of our guidance in *Garcia-Segura* that a reply that the court has addressed the defense's main mitigation arguments does not "waive an argument as to the merits or reasonableness of the court's treatment of the issue." 717 F.3d at 569. If there was ever any confusion, we recently clarified—albeit in a nonprecedential disposition—that "[a]rguments about the 'merits or reasonableness of the court's treatment' of mitigating factors are not waived by a defendant affirming that the court had *addressed*

those factors." *United States v. Cosby*, 746 F. App'x 556, 559 (7th Cir. 2018) (quoting *Garcia-Segura*, 717 F.3d at 569).

On any reading of the record, that was all Bridgewater was doing by confirming the court had addressed unwarranted sentencing disparities and the lack of evidence of his recidivism. When a defendant acknowledges that a court addressed an argument, it means the court considered the issue. It does not necessarily follow that the defendant agrees with how the court resolved the matter. So, Bridgewater preserved his challenge to the reasonableness of his sentence based on the merits of the court's disparity analysis.

This conclusion aligns with our long line of precedent that we review the substantive reasonableness of a sentence for abuse of discretion. *See, e.g.*, *United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019). In *United States v. Castro-Juarez*, we held that a defendant need not object to a sentence as unreasonable after its pronouncement to preserve appellate review. 425 F.3d 430, 433–34 (7th Cir. 2005). We reasoned that to decide otherwise "would create a trap for unwary defendants and saddle busy district courts" with an overly formalistic procedure. *Id.* Indeed, "we fail[ed] to see how requiring the defendant to then protest the term handed down as unreasonable [would] further the sentencing process in any meaningful way." *Id.* at 434.

Since *Castro-Juarez*, we have explained that when a defendant argues for a lower sentence and gives reasons for it, we do not require the defendant to "object again and make the same arguments." *Cosby*, 746 F. App'x at 560 (citations omitted); *see also, e.g.*, *United States v. Snyder*, 635 F.3d 956, 962 (7th Cir. 2011) (highlighting that "we have repeatedly held that the rules do not require a defendant to complain about a

judicial choice after it has been made so long as the defendant argued for a lower sentence before the court imposed the sentence."). For good reason, too: it would be bordering on the absurd to demand that a defendant have the foresight to anticipate a court's legal conclusions and the justifications for them. *Cf. United States v. Collins*, 939 F.3d 892, 897 (7th Cir. 2019) (refusing to require defendants to predict future legal errors).

That is especially true in this case because, before the district court ruled, Bridgewater's disparity argument was neither aggravating nor mitigating given that he requested a Guidelines sentence. It was only after the court notified him that it was increasing his sentence above the Guidelines range that he would have known to disagree with the decision because now, in his view, there was an unwarranted disparity. But by that time, the court had already assessed the issue—in fact, the court relied on it in part as one of the grounds for the sentence—and there was no need for Bridgewater to voice his "exception" to a judgment already reached. *United States v. Lewis*, 823 F.3d 1075, 1082 (7th Cir. 2016); *see also, e.g.*, *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) ("[The defendant's] sentence was the subject of extensive argument and evidence; his lawyer did not need to argue with the judge once the sentence had been pronounced.").

What is more, Bridgewater's plea agreement expressly reserved his right to appeal the substantive reasonableness of his sentence if it exceeded "the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater)." Again, before the district court imposed its sentence, Bridgewater had no reason to make a dis-

parity argument as a Guidelines sentence—which he expected to receive—could not have resulted in disparity. He therefore preserved his substantive challenge to the reasonableness of his sentence on appeal.

### B. Statutory Sentencing Factors

Bridgewater chiefly contends that his above-Guidelines sentence is substantively unreasonable because it creates unwarranted disparities among defendants who have similar convictions and similar records. He also tacks on his point that the district court erroneously reasoned that he would recidivate when it had no evidence to support that conclusion. We disagree.

"We uphold a sentence so long as the judge offers an adequate statement of his reasons consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a)." *Porraz*, 943 F.3d at 1104 (citation omitted). We review the district court's above-Guidelines deviation—like all reasonableness challenges—for abuse of discretion. *See United States v. Pietkiewicz*, 712 F.3d 1057, 1060 (7th Cir. 2013) (citation omitted). We do not presume a sentence outside the Guidelines range is unreasonable. *See United States v. Henshaw*, 880 F.3d 392, 396 (7th Cir. 2018). "As long as the sentencing judge gives an adequate justification, the judge may impose a sentence above the guidelines range if he believes the range is too lenient." *United States v. Hayden*, 775 F.3d 847, 849 (7th Cir. 2014) (citations omitted).

During our inquiry, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Henshaw*, 880 F.3d at 396 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Although there is no precise formula for deciding whether the basis for exceeding

the range is proportional to the sentence's deviation from the range, a district court must seriously consider the degree of its deviation and explain why "an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* (quoting *Gall*, 552 U.S. at 46). It follows that a "major departure should be supported by a more significant justification than a minor one." *Id.* (quoting *Gall*, 552 U.S. at 50).

### 1. *Unwarranted Sentence Disparities*

As Bridgewater reminds us, "in determining the particular sentence to be imposed, [the court] shall consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "But sentencing is never abstract: the district court is required by [§ 3553] to tailor its sentence to the particular defendant before it." *United States v. Solomon*, 892 F.3d 273, 279 (7th Cir. 2018); *see also United States v. Lockwood*, 840 F.3d 896, 904 (7th Cir. 2016) ("In our legal tradition, each defendant is treated as a unique individual and 'every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (citation omitted)).

It makes sense, then, that the disparity provision "leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013) (citation omitted); *see also, e.g.*, *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) (observing that "§ 3553(a)(6) disallows '*unwarranted* sentence disparities' … , not all sentence differences."). For instance, differences in types of charges or other differences among defendants often justify disparate sentences. *See United States v. Scott*, 631 F.3d

401, 404–05 (7th Cir. 2011), *as amended* (Jan. 28, 2011); *see also United States v. Duncan*, 479 F.3d 924, 929 (7th Cir. 2007) ("'A sentencing difference is not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation,' or is the result of statutory authorization." (citations, brackets, and emphasis omitted)). Unwarranted disparities, however, "result when the court relies on things like alienage, race, and sex to differentiate sentence terms." *United States v. Gonzalez*, 765 F.3d 732, 739 (7th Cir. 2014) (citation omitted).

Indeed, "[t]here is always some risk of disparities with any sentence, whether above, below, or within the guideline range. The key word is 'unwarranted.'" *United States v. Castaldi*, 743 F.3d 589, 597–98 (7th Cir. 2014); *see also Snyder*, 635 F.3d at 961 ("'Whenever a court gives a sentence substantially different from the Guidelines' range, it risks creating unwarranted sentencing disparities, in violation of 18 U.S.C. § 3553(a)(6), for most other [courts] will give sentences closer to the norm.'" (citation omitted)); *Boscarino*, 437 F.3d at 638 ("Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose after *Booker*, the more disparity there will be."). As always, a district court must carefully consider the Guidelines range before deviating above it. But so long as the court does this, it "necessarily gives significant weight and consideration to the need to avoid unwarranted disparities." *Lockwood*, 840 F.3d at 904 (quoting *Gall*, 552 U.S. at 54 (brackets omitted)).

In this case, the district court gave ample weight to the Guidelines but ultimately concluded they failed to properly

reflect the scope of Bridgewater's conduct.[1] It reasoned, in part, that were it not to deviate above the Guidelines to account for the dismissed enticement charge, the sentence would not reflect the totality of the circumstances of his offense and thus would differ from others like it. That is a reasonable inference after considering attempted enticement of a minor carries with it a ten-year mandatory-minimum sentence. *See* 18 U.S.C. § 2422(b).

Bridgewater focuses on three cases as comparators, but only one, *United States v. Heath*, is an arguable candidate. No. 18-cr-40032 (S.D. Ill. June 7, 2018). Even if Bridgewater's offense conduct and record is like the defendant's in that case, such that they received disparate sentences, that does not necessarily mean that the disparity is unwarranted. *See Brown*, 732 F.3d at 789 ("[A] different sentence for the same charge does not alone raise any concern about unwarranted disparities under § 3553(a)(6)."). When the government dismisses the conduct underlying a charge based on a plea agreement, it may put the defendant in a different situation from most other

---

[1] We agree with the government that Bridgewater's effective Guidelines range was sixty months because of the statutorily imposed mandatory minimum sentence. *See* U.S.S.G. 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). To the extent it is relevant to measure the degree of the district court's deviation (from 60 months to 78 months, so an 18-month or 30% increase), we use the 60-month number. Assuming for the sake of argument that we should instead utilize the pre-mandatory minimum Guidelines range of 37–46 months to conduct our disparity analysis, we conclude Congress authorized most of the disparity when it required a mandatory minimum sentence of 60 months. *Cf. United States v. Ramirez-Ibarra*, 182 F. App'x 591, 593 (7th Cir. 2006). A congressionally authorized disparity cannot be "unwarranted."

defendants sentenced for their crime of conviction. *See United States v. Lucas*, 670 F.3d 784, 797 (7th Cir. 2012).

In those circumstances, like the ones here, it is the parties' plea agreement that potentially creates a disparity, not the court. *See United States v. Gill*, 889 F.3d 373, 378 n.2 (7th Cir. 2018) (citing *Scott*, 631 F.3d at 404–06, for the proposition that when the government decides to dismiss some charges for some defendants but none for others, it does not create a sentence disparity for the court to consider). Consequently, if some courts refuse to account for dismissed conduct in sentencing—unlike the court here—that does not mean the disparities are unwarranted. *See United States v. Horne*, 474 F.3d 1004, 1007 (7th Cir. 2007).

To hold otherwise would mean that all sentences would have to model the ones that do not consider dismissed conduct, and the courts that imposed them would control sentencing nationwide. *See id.* Such a result runs contrary to the purposes and goals of sentencing in the advisory Guidelines regime. Federal law authorizes a court to raise (or reduce) one defendant's sentence based on another's lenient (or harsh) sentence "*not because* of § 3553(a)(6), but *despite* it." *United States v. Prado*, 743 F.3d 248, 252 (7th Cir. 2014) (quoting *Bartlett*, 567 F.3d at 908); *see also United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017) (explicating that a court "is never compelled by § 3553(a)(6) in order to avoid unwarranted disparities").

Our concern with the risk of unwarranted disparities would be greater if the district court's sentence approached the statutory maximum imprisonment term (here, twenty years). *See United States v. Kirkpatrick*, 589 F.3d 414, 415 (7th Cir. 2009). In that situation, for example, it may be "wise [for

the district court] to see how much incremental punishment the Sentencing Commission recommends." *Id.* at 416. That said, we have only suggested as much when it comes to an unusually high sentence on account of an additional crime that is already factored into the Guidelines range. *See United States v. Hallahan*, 756 F.3d 962, 981 (7th Cir. 2014); *see also United States v. Woods*, 375 F. App'x 600, 602 (7th Cir. 2010) (clarifying it is a recommendation, not a requirement).

Here, by contrast, the Guidelines did not contemplate this conduct completely, and the amount of the deviation is not so great that the district court had a corresponding heightened duty to tie its sentence to the Guidelines more than it already did. *See United States v. Faulkner*, 885 F.3d 488, 499–500 (7th Cir. 2018), *reh'g denied* (Apr. 11, 2018), *cert. denied sub nom.*, *Sykes v. United States*, 139 S. Ct. 260, (2018), *and cert. denied*, 139 S. Ct. 388 (2018) (finding an 18% deviation substantively reasonable based on affirmances of sentences with 50, 35, and 50% deviations above the applicable Guidelines ranges); *see also United States v. Alvarado*, 480 F. App'x 852, 855 (7th Cir. 2012) (calling an 11-to-17 month difference between a 7-to-13 month Guidelines range and a 24-month imprisonment term "minor"). The court's 18-month (or 30%) deviation in this case did not introduce unwarranted sentence disparities among similar defendants.

### 2. *Recidivism*

As to recidivism, we note that the district court never specifically mentioned it or that Bridgewater himself was prone to commit crimes again. Maybe Bridgewater is thinking of the court's statement that it was imposing an above-Guidelines sentence in part "to deter future criminal conduct, conduct of this nature, of any criminal nature, and that there is a need to

protect the public from future crimes by you." Although specific deterrence and the likelihood of recidivism are typically related, we have referred to them as independent reasons for an upward deviation. *See United States v. Johns*, 732 F.3d 736, 742 (7th Cir. 2013); *see also United States v. Huffstatler*, 571 F.3d 620, 624 (7th Cir. 2009).

More importantly, the district court described on the record and at length the facts and circumstances of Bridgewater's case, with emphasis on the severity of the dismissed conduct. The court explained in considerable detail why the dismissed conduct aggravated Bridgewater's offense and hence warranted his above-Guidelines sentence. We require nothing more. *See, e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (concluding that the district court adequately explained its sentence by sufficiently linking it to the § 3553(a) factors). Bridgewater's history and characteristics—when combined with the nature and circumstances of his offense—made it entirely reasonable for the district court to fashion its sentence to quash any residual impulse or desire to recidivate. *Cf. United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007) ("The more difficult it is for a person to resist a desire for sexual contact with children, the more likely he is to recidivate, and this is an argument for a longer prison sentence.").

## C. Constitutionality of Considering Dismissed Conduct

Moving to the merits of the constitutional claim, Bridgewater maintains that the district court's reliance on dismissed conduct to increase his sentence violates his rights to due process and a jury trial. He recognizes, however, that Supreme Court and Circuit precedent squarely foreclose this argument. *See United States v. Watts*, 519 U.S. 148, 157 (1997); *see also United States v. Holton*, 873 F.3d 589, 591–92 (7th Cir. 2017) (per

curiam); *Lucas*, 670 F.3d at 790 ("A district court may consider a wide range of conduct at sentencing, including acquitted conduct and dismissed offenses."). Usually, we would just leave it at that. But because this issue was the premise for Bridgewater's statutory arguments, we add two observations in closing.

First, it is not just judicial opinions that preclude Bridgewater's constitutional claim; Congress and the Sentencing Commission compelled our view. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S.S.G. 5K2.21 ("The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.").

Second, and as explained above, we have affirmed above-Guidelines sentences after determining it was substantively reasonable to weigh dismissed conduct in sentencing decisions. *See United States v. Weathers*, 744 F. App'x 947, 948–49 (7th Cir. 2018) (collecting cases involving sentences that were 30, 33, and 75 months above the respective Guidelines ranges); *see also United States v. Mays*, 593 F.3d 603, 609–10 (7th Cir. 2010). Sometimes, the Guidelines just do not quite capture the nature of a defendant's crimes or the wide range of a defendant's conduct. *See United States v. Mejia*, 859 F.3d 475,

478–79 (7th Cir. 2017); *see also United States v. Gill*, 824 F.3d 653, 665–66 (7th Cir. 2016).

Similarly, Bridgewater did not simply solicit an obscene picture of a minor, which is all that his conviction required. He did much more than that: he attempted to entice that minor to meet with him in person for sex. The court's sentence appropriately reflects that conduct. After all, we want district courts to particularize their sentences to offenders and their offenses. That, in turn, means sentences must account for exacerbating circumstances when the Guidelines do not. *See United States v. Henzel*, 668 F.3d 972, 978 (7th Cir. 2012). For that reason, district courts must often address dismissed conduct to adequately consider the "seriousness of the offense" under 18 U.S.C. § 3553(a)(2). *See Lucas*, 670 F.3d at 797. This case fits that mold.

### III. Conclusion

For the reasons given, we AFFIRM Bridgewater's sentence as substantively reasonable.